IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARCHER DANIELS MIDLAND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 10 CV 1533 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BURLINGTON INSURANCE COMPANY GROUP, INC., c/b/a/ THE BURLINGTON INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant The Burlington Insurance Company's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). [10] For the reasons set forth below, the Court grants Defendant's motion [10].

**I.    Background**[1]

Plaintiff Archer Daniels Midland Company ("ADM") entered into a contract with Independent Building Maintenance Company ("IBM Co.") on June 6, 2002. The contract provided that IBM Co. would perform window cleaning services for ADM. The contract also provided that IBM Co. would obtain insurance to indemnify ADM for any liability arising from the work that IBM Co. performed for ADM under the contract. IBM Co. obtained a commercial general liability ("CGL") policy with The Burlington Insurance Company ("TBIC"). The policy

---

[1] For purposes of a Rule 12(c) motion, the Court will consider facts set forth in the complaint, answer, and exhibits attached to those pleadings. See *Housing Auth. Risk Retention Group Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004); *Cincinnati Ins. Co. v. Contemporary Distribution, Inc.*, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010). The Court views all facts in the light most favorable to the nonmoving party. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

included an endorsement that named ADM as an additional insured. The policy was effective from October 1, 2002, to October 1, 2003, and provided for a $1,000,000 occurrence limit.

On April 10, 2003, IBM Co. employee Miguel Gonzalez was cleaning windows for ADM when the ladder on which he was working slipped, causing him to injure his knee. Mr. Gonzalez filed a lawsuit against ADM on March 3, 2005, asserting negligence and premises liability counts ("the Gonzalez litigation" or "the underlying litigation"). Three months later, ADM tendered the defense of the Gonzalez litigation to TBIC. On June 23, 2005, TBIC accepted ADM's tender of defense. However, on July 11, 2005, TBIC rescinded its acceptance and disclaimed any duty to provide a defense. ADM settled its lawsuit with Mr. Gonzalez for $150,000 in October 2008, and alleges that it spent $197,648 in attorney's fees over the course of the litigation.

ADM filed a complaint against TBIC in the Circuit Court of Cook County on January 6, 2010. ADM's complaint seeks (1) a declaratory judgment that TBIC is liable to indemnify ADM for the Gonzalez settlement, (2) damages in the amount of $347,648, and (3) statutory penalties under 215 ILCS 5/155. TBIC removed the case to this Court on March 9, 2010.

On March 16, 2010, TBIC filed a counterclaim against ADM seeking a declaratory judgment that TBIC had no duty to defend ADM in the Gonzalez litigation because (1) the policy's "cross liability exclusion" barred coverage for bodily injury to an "employee of any insured" and (2) the "employer's liability exclusion" barred coverage for bodily injury to an "employee of the insured."

ADM asserted four affirmative defenses to TBIC's counterclaim. First, ADM contends that the exclusionary provisions do not apply under the circumstances of this case because of a "separation of insureds" clause in the policy. Second, ADM contends that the TBIC policy is

2

ambiguous and thus should be construed in favor of ADM. Third, ADM contends that TBIC's counterclaim is barred by the doctrine of estoppel. Finally, ADM contends that if the exclusionary clause does bar coverage for ADM, then TBIC's policy is illusory and therefore unenforceable.

**II.    Legal Standard for Deciding a Rule 12(c) Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Cincinnati Ins. Co. v. Contemporary Distrib. Inc.*, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010) (internal quotation marks and citation omitted). A defendant may seek dismissal of a complaint under Rule 12(c) after the pleadings are closed, but must do so early enough not to delay trial. See, *e.g.*, *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A court must grant a Rule 12(c) motion that a defendant files if "it appears beyond all doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). In deciding the motion, a court must view all facts in the light most favorable to the non-moving party. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

**III.   Analysis**

The parties agree that there is no dispute concerning the material facts. The Court is called upon only to determine the scope of coverage of the insurance policy, which is a question of law. See *Nicor, Inc. v. Associated Elec. and Gas Ins. Services Ltd.*, 860 N.E.2d 280, 285 (Ill. 2006) (holding that "[t]he construction of the provisions of an insurance policy is a question of

law"). Specifically, the Court must determine whether the exclusions in TBIC's CGL policy bar coverage for ADM in the underlying litigation and accordingly, whether TBIC was absolved of its duty to defend ADM in that litigation.

### A. Insurance Policy Contract Interpretation

As an initial matter, the Court notes that this case comes before it pursuant to its diversity jurisdiction, 28 U.S.C. § 1332(a), and that Illinois law governs. Under Illinois law, an insurance policy is a contract, and the same rules of construction that apply to other types of contracts apply to insurance policies. See *Nicor, Inc.*, 860 N.E.2d at 285. Thus, a court must "construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* The "primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement." *Id.* at 286. A court must accord the insurance policy's terms their plain and ordinary meaning. *Id.* at 285. When the policy is clear and unambiguous, a court must apply it as written unless doing so would contravene public policy. *Id.* However, if a policy term is ambiguous, a court must construe the policy "strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured." *Id.* (internal citations omitted). Whether an ambiguity exists turns on whether the language in the policy is susceptible of more than one reasonable interpretation. *Id.* The test of ambiguity is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. See *Ins. Co. of Illinois v. Markogiannakis*, 544 N.E.2d 1082, 1089 (Ill. App. Ct. 3d Dist. 1989).

A court deciding whether an insurer has a duty to defend its insured must compare the factual allegations in the underlying complaint to the pertinent provisions of the policy. See *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). A court

4

should construe the underlying complaint "liberally * * * in favor of the insured, and doubts and ambiguities are to be construed in favor of the insured." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 721-22 (Ill. 2004). If the complaint's allegations fall within or even potentially within the policy's coverage provisions, then the insurer has a duty to defend its insured in a lawsuit. See *id*. (holding that "[a]n insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage" (citations omitted) (emphasis in original)).

When an insurer relies upon an exclusionary provision to deny coverage to an insured, the applicability of the provision must be free and clear from doubt. See *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (citing *Markogiannakis*, 544 N.E.2d at 1094). If the exclusionary provision is at all ambiguous, a court should construe the provision most liberally in favor of the insured. See *Lyons*, 811 N.E.2d at 721-22; see also *Markogiannakis*, 544 N.E.2d at 1089 (holding that "[a]mbiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured"). The insurer bears the burden of proving that an exclusionary provision applies. See *Santa's Best Craft*, 611 F.3d at 347.

### B. The TBIC Policy

TBIC issued CGL policy number HGL0001965 to IBM Co., the named insured, for the policy period commencing on October 1, 2002, and ending on October 1, 2003. Reduced to its simplest terms, a CGL policy is a policy that is "usually obtained by a business, that covers damages that the insured becomes legally obligated to pay to a third party because of bodily injury or property damage." BLACK'S LAW DICTIONARY 809 (7th ed. 1999). A CGL policy

generally covers liability for damages that are not covered by more specific types of liability insurance policies (*e.g.*, business, automobile, and employer's liability). See *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 207 (Tex. App. 1st Dist. 2003). Here, the section of the policy entitled "commercial general liability coverage form" establishes that the policy covers liability for "bodily injury" caused by an "occurrence" in the "coverage territory" that first occurred during the policy period. [See 6-2, at 27.]

The TBIC policy is modified by an additional insured endorsement, which provides that the section of the policy defining "an insured" "is amended to include as an insured any person or organization with whom you [the named insured] agreed, because of a written contract, written agreement or permit, to provide insurance such as is afforded under this Coverage Part, but only with respect to your operations, 'your work' or facilities owned or used by you." [6-2, at 15]. The parties agree that IBM Co., the primary insured under the TBIC policy, added ADM as an additional insured pursuant to this provision in an endorsement to the policy. [See 6-3, at 31.]

The coverage form of the policy is also modified by several exclusions, only two of which are at issue here. First, the coverage form states that the policy excludes coverage for:

  e. Employer's Liability
     "Bodily injury' to:
         (1) an 'employee' of *the* insured arising out of and in the course of:
             (a) Employment of the insured; or
             (b) Performing duties related to the conduct of the insured's business * * *[.]
     This exclusion applies:
         (1) Whether *the* insured may be liable as an employer or in any other capacity; and
         (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

[6-2, at 28 (emphasis added).]

Second, the policy includes a "cross liability exclusion" endorsement, which provides that:

> This insurance does not apply to any actual or alleged 'bodily injury', 'property damage', 'personal injury' or 'advertising injury to * * * :
> 3.  A present, former, future or prospective partner, officer, director, stockholder or employee of *any* insured."

[6-3, at 17 (emphasis added).] The endorsement is prefaced with the admonition that: "This endorsement changes the policy. Please read it carefully." *Id.* The endorsement also states that "[a]ll other terms and conditions of this policy remain unchanged." *Id.*

In addition to the provisions quoted above, the TBIC policy includes a "separation of insureds clause" (more commonly known as a "severability clause" (see *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 727 n.1 (7th Cir. 1994))). The severability clause provides that:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
> a. As if each Named Insured were the only Named Insured; and
> b. Separately to each insured against whom claim is made or 'suit' is brought.

[6-3, at 4].

As discussed below, ADM argues in its complaint that the TBIC policy's severability clause modified the exclusion provisions of the policy such that ADM is not barred from receiving coverage under the policy for the Gonzalez litigation. Specifically, ADM argues that because Gonzalez was an employee not of ADM but rather of IBM Co., TBIC had a duty to defend ADM in the underlying litigation. ADM argues that TBIC breached its duty to defend, and so should be estopped from relying on the exclusion provisions as defenses in this litigation. Alternatively, ADM argues that the terms of the TBIC policy are at best ambiguous, and thus should be construed as providing coverage and triggering a duty to defend the underlying case.

7

Finally, ADM argues that if the policy is indeed construed as excluding coverage for bodily injury by an employee, then the policy is illusory and unenforceable.

In its motion for judgment on the pleadings [10], TBIC contends that the severability clause has no impact on the cross liability exclusion because the language of the exclusion states that the policy does not cover bodily injury to an employee of "*any* insured." TBIC submits that because ADM is excluded from coverage for the Gonzalez litigation, TBIC had no duty to defend and therefore should not be estopped from asserting coverage defenses. TBIC further contends that application of the cross liability exclusion to ADM under the circumstances of this case does not render the policy illusory. The Court addresses in turn the parties' arguments as to application of the exclusion provisions, estoppel, and whether the policy is illusory.

### C. The Severability Clause Modifies Application of the Employer's Liability Exclusion But Does Not Modify Application of the Cross Liability Exclusion

In general, severability clauses are intended "to treat each entity covered under the policy as if each were insured separately." *St. Katherine Ins. Co. Ltd. v. Ins. Co. of N. Am., Inc.*, 11 F.3d 707, 710 (7th Cir. 1993) (citing *United States Fid. & Guar. Co. v. Globe Indem. Co.*, 327 N.E.2d 321 (1975)). ADM and TBIC dispute whether the severability clause in the TBIC CGL policy modifies the policy's employer's liability exclusion clause and the cross liability exclusion endorsement so as to limit application of those exclusions only to IBM Co. (and not to ADM). The effect of the severability clause on those two exclusion provisions is governed by the different language used in each exclusion provision and, to a lesser extent, by the underlying purpose of each exclusion. As explained below, because the employer's liability exclusion – which prevents double recovery for individuals covered by a worker's compensation policy – bars coverage for bodily injury to an employee of "the insured," the severability clause operates to limit application of the exclusion to cases in which the injured person sues his employer

8

("employer-insured"), but not to cases in which the injured person sues an additional insured who is not his employer ("non-employer insured"). See *Globe*, 327 N.E.2d at 321-22. By contrast, because the cross liability exclusion – which excludes coverage for suits brought by one insured against another insured – bars coverage for bodily injury to an employee of "any insured," the severability clause does not modify application of the exclusion to only the employer-insured, but to the non-employer-insured as well.

1. **The Employer's Liability Exclusion**

In *Globe*, the Illinois Supreme Court considered the interplay of a severability clause and an employee exclusionary clause that barred coverage for bodily injury to employees of "the insured." 327 N.E.2d at 321-22. The court held that:

> After due consideration to the language and intent of the policy, we conclude that the severability clause provides each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. The employee exclusion, therefore, does not exclude protection for an additional insured against an injury suffered by an employee of another insured. The exclusionary clause applies only to the situation where an insured is sued by its own employee.

*Id.* at 323. The court noted that if the insurer sought also to exclude coverage for an insured who was not the employer of the injured employee, that exclusion "could have been clearly stated." *Id.* at 323. The court thus implied – but did not decide – that drafting an exclusion that applied more broadly might be effective in barring coverage for employee's suits against non-employer-insureds despite the existence of a severability clause. *Id.*

In addition to the plain language of the policy, the purpose of the employee exclusion – namely, to prevent an employee who is covered by a worker's compensation program from recovering in a private suit against his employer – supports the rule in *Globe*. *Id.* at 322. As explained by a district court in the Southern District of New York, an employer's liability

9

exclusion "recognizes that general liability coverage is unnecessary for an employer whose employee is injured in the course of his employment since the workman's compensation system (and the required workman's compensation's insurance coverage) covers such an injury." *Shelby Realty LLC v. Nat'l Surety Corp.*, 2007 WL 1180651, at *4 (S.D.N.Y. Apr. 11, 2007). Read together, an employer's liability exclusion "precludes over-coverage (where an employer has both workman's compensation insurance and commercial liability insurance for an employee's injury) by excluding claims stemming from an employee's bodily injury sustained 'in the course of his employment,' and the [severability clause] precludes under-coverage (where a party is left without either workman's compensation insurance or commercial liability insurance) by limiting the employee exclusion to the actual employer of the injured party." *Id.*; see also 2 COUCH ON INS. § 115:22 (noting that "[t]he presence of a severability clause has been held to work a liberalizing effect, in that an additional insured who injures one of the named insured's employees may have coverage in spite of the exclusion * * *. However, coverage is not extended in all cases.").

Here, as in *Globe*, the TBIC CGL policy includes an employer's liability exclusion that bars coverage for bodily injury to "an 'employee' of *the* insured." [6-2, at 28 (emphasis added).] The parties do not dispute that, according to the underlying complaint, Mr. Gonzalez was an employee of IBM Co., not ADM. Nor do the parties dispute that Mr. Gonzalez filed a lawsuit against ADM, not IBM Co. Given these undisputed facts, as a matter of law, both the plain language and the underlying purpose of the exclusion militate against a conclusion that the exclusion applies to ADM for purposes of the Gonzalez litigation. Rather, as in *Globe*, the severability clause modifies the exclusion such that coverage is barred only where the injured

person seeks coverage from the employer-insured. Accordingly, the employer's liability exclusion does not bar coverage to ADM for the Gonzalez litigation.

### 2. The Cross Liability Exclusion

ADM urges the Court to apply the holding of *Globe* to the cross liability exclusion endorsement in the TBIC policy as well as the employer's liability exclusion. ADM argues that even though the cross liability exclusion bars coverage to injury of an employee of "*any* insured" and not just "*the* insured," the severability clause operates to limit the application of the exclusion to IBM Co. only and not to ADM. By contrast, TBIC argues that the severability clause has no effect on the cross liability exclusion in view of that exclusion's use of the term "any insured." In other words, TBIC states that the plain language of the cross liability exclusion means that there is not even the potential for coverage for ADM in the underlying Gonzalez litigation, and thus that TBIC had no duty to defend. See *Gould & Ratner v. Vigilant Ins. Co.*, 782 N.E.2d 749, 758 (Ill. App. Ct. 1st Dist. 2002) (holding that an insurer need not file a declaratory judgment action to preserve its rights "every time [it is] informed of a claim from an insured * * * where there clearly is no potential for coverage").

No Seventh Circuit or Illinois Supreme Court case directly addresses the question of how, in a CGL policy, a severability clause affects a cross liability exclusionary endorsement that bars coverage for a suit brought by an employee of "any insured."[2] Two Illinois Appellate Court

---

[2] One Seventh Circuit case has passed on the issue of whether a business pursuits exclusion phrased in terms of "any insured" barred coverage for a negligence action against the husband of a woman who was engaged in a business pursuit. See *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724, 725-26 (7th Cir. 1994). In *Thoele*, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the insurer in a case concerning whether a "business pursuits" exception of a homeowner's insurance policy applied to the husband of a woman who was engaged in a business pursuit at the time of the incident for which coverage was sought. 39 F.3d at 725-26. The Seventh Circuit held that "[i]f the exclusion merely applied to the business pursuits of '*the* insured,' the [parties seeking coverage] might have a point. But the exclusion instead applies to injuries arising out of the business pursuits of '*any* insured.' The district court was quite right to conclude that the choice of the word 'any' broadened the exclusion to include

11

cases have applied the holding in *Globe* to exclusions that bar coverage for "a" or "any" insured under the policy. See *Atchison, Topeka and Santa Fe Ry. Co. v. St. Paul Surplus Lines Ins. Co.*, 767 N.E.2d 827, 828 (Ill. App. Ct. 1st Dist. 2002); *Cook v. Country Mut. Ins. Co.*, 466 N.E.2d 587, 588 (Ill. App. Ct. 3d Dist. 1984). However, the Court finds both of those cases distinguishable in that they considered only employer's liability exclusions and not cross liability exclusions.

In *Atchison*, the court considered the impact of a severability clause on an employer's liability exclusion that barred coverage for bodily injury to employees of "a protected person." 767 N.E.2d at 828. ITS had a CGL policy with the defendant insurance company that covered Atchison under the "additional protected persons" endorsement. *Id.* The policy contained a severability clause. *Id.* The policy also contained an employer's liability exclusion that barred coverage for "bodily injury to an employee arising out of and in the course of his or her employment by *a protected person*." *Id.* (emphasis added). Several ITS employees were injured while performing work in Atchison's railway yards, and brought suit against Atchison. *Id.* at 829. The circuit court held that the severability clause did not affect application of the exclusion, and that Atchison therefore was not covered by the policy in the underlying suits. *Id.* at 830-31. The appellate court reversed, noting that in *Globe* the Illinois Supreme Court considered "the purpose of both the *severability clause*, to afford coverage separately to each insured, and the *employer liability exclusion*, to preclude an employee from suing his employer for injuries

---

injuries triggered by one insured in connection with the business pursuits of another." *Id. Thoele* suggests that an exclusion bars coverage for each insured if it refers to exclusions for "any insured." *Id.* However, *Thoele* did not consider the exclusionary clause at issue in the homeowner's policy in light of a severability clause. Thus, *Thoele* left open the question of whether a severability clause limits application of an exclusionary endorsement that otherwise applies to "any insured." *Id.*; see also *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1348 (Ill. App. Ct. 2d Dist. 1995) (holding, without considering a severability clause, that business pursuits exclusion of homeowner's policy applied to husband of wife who operated daycare business in home).

suffered as a result of the employer's negligence. In considering the intent of *these provisions*, we find any distinction between the use of the term 'the insured' and 'a protected person' to be insignificant." *Id*. at 831 (emphasis added).

Similarly, in *Cook*, the appellate court held that a severability clause modified an employer's liability exclusion that barred coverage for "bodily injuries sustained by an employee of *an* insured in the course of employment for that insured." *Cook*, 466 N.E.2d at 588. Citing *Globe*, the court held that "[t]he language shows that the insurer recognizes an obligation to additional insureds distinct from its obligations to the named insured." *Id.* The court further held that the defendant's effort to read *Globe* narrowly so as to apply only to employer's liability exclusions that referenced "*the* insured" and not to exclusions that referenced "*an* insured" was tenuous and unpersuasive. *Id***.**

In addition to these Illinois appellate court cases, another judge in this district has considered the interplay of a severability clause and a professional services exclusion as applied to an additional insured. In *United States Fidelity and Guaranty Co. v. Shorenstein Realty Servs.*, 700 F. Supp. 2d 1003, 1007 (N.D. Ill. 2009), plaintiff USF & G issued a policy under which Eckland Consultants, Inc., an architectural firm that was responsible for overseeing a restoration project at the John Hancock Center, was the named insured. Shorenstein – an entity that owns, operates and controls the John Hancock Center – was named an additional insured under the policy. *Id.* at 1004-05. The policy included a "professional services exclusion" barring coverage for personal injury caused by rendering or failing to render any professional services by or on behalf of "any insured." *Id.* at 1007. Scaffolding fell from the John Hancock Center and killed or injured pedestrians, and several individuals consequently filed suit against Shorenstein. *Id.* at 1004. Shorenstein sought defense in those suits from USF & G and was

13

refused. *Id.* at 1005. The court held that it was clear under the policy that "as an additional insured, Shorenstein qualifies as an insured under * * * the Policy. The professional services exclusion applies to 'any insured'; it makes no distinction between, or exception for, insureds who also happen to be additional insureds under the Policy. Accordingly, Shorenstein is subject to the professional exclusion * * *." *Id* at 1009-10. However, the court held that even though Shorenstein was subject to the professional services exclusion, USF & G still had a duty to cover Shorenstein in the underlying suits because of the policy's severability clause. *Id.* at 1010-11. The court reasoned that:

> [T]he Policy's Separation of Insureds provision must be interpreted as requiring that the coverage of each insured or additional insured be determined separately from other insureds. Under this interpretation, the fact that the professional services exclusion deprives Eckland of coverage under the Policy does not mean that Shorenstein, too, is without coverage. Rather, the professional services exclusion must be applied vis a vis Shorenstein's own conduct. When it is thus applied, Shorenstein remains covered because it did not perform professional services in connection with the project.

*Id.* at 1014-15. The court's rationale rested in part on the fact that the policy in question was a CGL policy and "was not intended to provide coverage to architects and engineers such as Eckland for liability arising specifically out of their performance of professional services." *Id.* at 1010.

For two reasons, the Court respectfully declines to follow *Atchison*, *Cook*, and *Shorenstein* (none of which is binding on this Court or directly on point) in holding that the severability clause at issue in the TBIC policy limits application of the cross liability exclusion to IBM Co. First, a court must give effect to the plain language of an insurance policy's exclusion provision. See *First Nat'l Bank of Chicago v. Fid. & Cas. Co. of New York*, 428 F.2d 499, 501 (7th Cir. 1970) (holding that an insurer may limit coverage, and when it has done so the plain language of the limitation must be effectuated); see also 2 COUCH ON INS. § 22:31 (providing that

"the rule that exceptions to and limitations upon the coverage otherwise provided by an insurance contract will be strictly construed against the insurer will not overcome plain contract language"). The majority rule is that the distinction between the terms "the insured" and "any insured" in an exclusion is crucial in determining the import of a severability clause. See *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 2010 WL 2541832, at **8-9 (D. Haw. Jun. 22, 2010) (reviewing cases examining impact of severability clause on exclusions pertaining to "any insured" and applying majority rule that severability clause has no impact on such exclusions); *Am. Family Mutual Ins. Co. v. Eastman*, 698 N.W.2d 337, 337 (Iowa 2005) (same); see also *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp. 413, 420 (E.D. Pa. 1996) (holding that the distinction between an exclusion clause that refers to "the insured" and one that refers to "any insured" "is paramount").

In this case, the distinction between the terms "the insured" and "any insured" is all the more significant given that the terms are used in different exclusion provisions of the policy; as discussed above, the employer's liability exclusion refers to "the insured," whereas the cross liability exclusion refers to "any insured." According to fundamental principles of contract construction, the difference cannot be meaningless; the Court must accord significance to use of the different articles in the different exclusions. See 2 COUCH ON INS. § 22:43 (stating that "[s]ince it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction, and every clause will be enforced where that can be done without doing violence to the rights of either party"). And, notably, "[a]n insurance policy may exclude coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances, and thus, an insurer is not absolutely prohibited from drafting and enforcing policy provisions

15

that provide or leave intact coverage for some, but not all, manifestations of a particular peril." *Id.* at § 22:30 (citing *Julian v. Hartford Underwriters Ins. Co.*, 110 P.3d 903, 910 (Cal. 2005)).

Use of the term "any insured" in the cross liability exclusion "unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds." *Michael Carbone*, 937 F. Supp. at 421. Thus, although the severability clause of the TBIC policy modifies application of the employer's liability exclusion reference to "the insured" such that it does not bar coverage to ADM in the circumstances of this case, the severability clause has no such effect on the cross liability exclusion's application to "any insured." In other words, even though the policy applies separately to ADM and to IBM Co., both insureds are barred from coverage for bodily injury to an employee of *either* ADM or IBM Co. under the plain, "*any* insured" language of the cross liability exclusion.

Second, *Atchison*, *Cook*, and *Shorenstein* are distinguishable in that they concern exclusions whose purposes are distinct from the cross liability exclusion at issue here. A court construing an exclusionary provision of an insurance policy "must examine the purpose of the exclusion, the public policy considerations involved, and the transaction as a whole." 2 COUCH ON INS. § 22:30. *Atchison* and *Cook*, like *Globe*, concerned employer's liability exclusions. See *Atchison*, 767 N.E.2d at 828; *Cook*, 466 N.E.2d at 588; *Globe* 327 N.E.2d at 322. As discussed above, an employer's liability exclusion is intended to prevent unnecessary coverage when an employee already is covered by the worker's compensation system. See *Globe* 327 N.E.2d at 322; *Shelby Realty LLC*, 2007 WL 1180651, at *4. It follows that a severability clause operates to limit the employer's liability exclusion so that the exclusion does *not* apply to an insured who *is not* the employer of the injured person, because that injured person will *not* be eligible for worker's compensation. *Shorenstein*, meanwhile, concerned a professional services exclusion.

See *Shorenstein*, 700 F. Supp. 2d at 1007. As the name suggests (and as the court in *Shorenstein* discussed explicitly in support of its holding), a professional services exclusion bars professional service providers from receiving the type of general liability coverage provided by a CGL policy. See *Shorenstein*, 700 F. Supp. 2d at 1010.

A cross liability exclusion, by contrast, bars coverage for claims brought by one insured against another insured. See *Underwriters at Lloyds London v. STD Enter., Inc.*, 395 F. Supp. 2d 1142, 1144 (M.D. Fla. 2005). The rationale that supports reading the severability clause to modify an employer's liability exclusion or professional services exclusion simply does not apply to the cross liability exclusion context. Indeed, the Court can conceive of no logical reason why the severability clause would operate to limit application of an exclusion whose very purpose is to prevent one insured (or its employee) from suing another insured (or its employee).

In sum, in view of the unambiguous language of the exclusion, the policy contract as a whole, the purpose of the exclusions, and the extant case law, the Court concludes that the severability clause limits application of the employer's liability exclusion provision such that the exclusion does not bar coverage for ADM in the Gonzalez litigation because ADM was not Mr. Gonzalez's employer. However, the severability clause has no impact on the cross liability exclusion endorsement because the endorsement refers to "any insured" and is intended to prevent coverage in precisely the type of scenario presented byn the underlying litigation.

D. **Construing the Cross Liability Exclusion as Barring Coverage for ADM for the Gonzalez Litigation Does Not Render the TBIC Policy Illusory**

ADM asserts as an affirmative defense to TBIC's counterclaim for declaratory judgment that if the TBIC policy's exclusions apply to the circumstances of this case such that TBIC has no duty to defend ADM in the Gonzalez litigation, then the policy is illusory and unenforceable. TBIC counters that despite the exclusions, the policy provides coverage for (1) bodily injury

claims brought by an individual who was not an employee of either IBM Co. or ADM, and (2) for certain property damage claims, and thus is not illusory.

Under Illinois law, an insurance policy is illusory if "there is no possibility under any set of facts for coverage." *Employers' Fire Ins. Co. v. Berg*, 2007 WL 273559, at *4 (N.D. Ill. Jan. 25, 2007) (citing *WE Erickson Const., Inc. v. Chicago Title & Trust Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. Ct. 1st Dist. 1994)). An illusory promise contravenes public policy and is unenforceable. See *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Glenview Park Dist.*, 632 N.E.2d 1039, 1046 (Ill. 1994) (holding that an exclusion violates public policy and so renders the policy unenforceable where the "exclusion deceptively affects the general liability risks that the endorsement purports to assume"). However, a court should not deem a contract unenforceable "unless it is expressly contrary to the law or public policy." *Am. Country Ins. Co. v. Cline*, 722 N.E.2d 755, 760 (Ill. App. Ct. 1st Dist. 1999). In general, "the construction of a contract that renders the agreement enforceable rather than void is preferred." *Id.* (citing *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303-04) (Ill. 1997)).

Here, although the cross liability exclusion bars coverage for ADM in the event of bodily injury to an IBM Co. employee (as in the underlying Gonzalez litigation), the exclusion does not preclude any possibility of coverage under other facts. Moreover, the "any insured" language of the exclusion is plain and clear and does not surreptitiously take away the coverage that the additional insured endorsement or other policy provisions purport to grant. As such, the TBIC policy is not unenforceable as illusory.

### E. TBIC Is Not Estopped From Asserting Coverage Defenses

ADM also asserts as an affirmative defense that TBIC should be estopped from arguing that the CGL policy does not provide coverage in the underlying litigation. If, comparing the

allegations of the underlying complaint with the insurance policy, any potential for coverage for the lawsuit exists, then an insurer must either (1) seek a declaratory judgment regarding its obligations and rights under the policy or (2) defend the insured under a reservation of rights. See *Pietras v. Sentry Ins. Co.*, 2007 WL 715759, at *4 (N.D. Ill. Mar. 6, 2007) (citing *Fidelity & Cas. Co. v. Envirodyne Eng'rs, Inc.*, 461 N.E.2d 471, 473 (Ill. App. Ct. 1st Dist. 1983)). If the insurer takes neither course and a court later determines that the insurer owed a duty to defend in the underlying claim, then "the insurer is estopped from raising policy exclusions or noncoverage as a defense in a coverage action." *Id.* (citing *Central Mut. Ins. Co. v. Kammerling*, 571 N.E.2d 806, 829 (Ill. App. Ct. 1st Dist. 1991)).

Here, as set forth above, the cross liability exclusion unambiguously bars coverage for ADM in the underlying lawsuit. Accordingly, under the plain language of the policy, there was no potential for coverage under the TBIC policy. TBIC thus had no duty to defend ADM in the underlying litigation, and TBIC is not estopped from raising the cross liability exclusion as a defense.

### F. Statutory Penalties 215 ILCS 5/155

Finally, ADM asserts a claim for statutory penalties pursuant to 215 ILCS 5/155. TBIC asks the Court to conclude on the basis of the pleadings that, as a matter of law, TBIC is not liable for statutory penalties.

Section 5/155 provides in relevant part that:

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

Here, the Court can discern no allegation in the pleadings that TBIC acted in a vexatious or unreasonable manner in denying coverage to ADM for the Gonzalez litigation. According to the complaint, TBIC rescinded its initial acceptance of the defense of the Gonzalez litigation within a few weeks. And under the analysis set forth above, TBC properly declined to defend ADM or provide coverage for the Gonzalez litigation pursuant to the plain terms of its policy. In these circumstances, TBIC could not have acted in a vexatious or unreasonable manner. See *Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 858 (Ill. App. Ct. 1st Dist. 2000). Therefore, as a matter of law, ADM is not entitled to statutory penalties under Section 5/155.

**IV. Conclusion**

For the reasons above, the Court grants TBIC's motion [10] for judgment on the pleadings.

Dated: March 29, 2011

Robert M. Dow, Jr.
United States District Judge

20